UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                         |

SUB-ZERO, INC.,                            |

                Plaintiff,           |

                              |     13-CV-2548 (KMW) (JLC)
     -against-                |

                              |     <u>OPINION & ORDER</u>

SUB ZERO NY REFRIGERATION &     |
APPLIANCES SERVICES, INC., and NIKKI  |
GROCHOWSKI,                     |

               Defendants.     |

                                           |
---------------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

      Plaintiff Sub-Zero, Inc. ("Sub-Zero" or "Plaintiff"), a Wisconsin corporation, brings this

action asserting claims for trademark infringement and false advertising in violation of the Lanham

Act, 15 U.S.C. §§ 1114, 1125(a)(1)(B), as well as common law trademark infringement and unfair

competition under New York law against Defendant Sub-Zero NY Refrigeration & Appliances

Services, Inc. ("Sub-Zero Refrigeration Service"), a New York corporation, and Defendant Nikki

Grochowski ("Grochowski") (collectively "Defendants"), Sub-Zero Refrigeration Service's alleged

owner.  Defendants have failed to answer or otherwise appear in this action.  Plaintiff now moves

for entry of default judgment against Defendants, seeking a permanent injunction pursuant to 15

U.S.C. § 1116; an order requiring Defendants to deliver for destruction any infringing

advertisements pursuant to 15 U.S.C. § 1118; and attorney's fees[1] of $9,676.00 and costs of

$1,738.00 pursuant to 15 U.S.C. § 1117.

---

[1] Following the Second Circuit's practice, this opinion refers to such fees as "attorney's fees," the term used in 15 U.S.C. § 1117(b).  *See, e.g.*, *Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83, 87 n.1 (2d Cir. 2012) ("We refer to such fees throughout this opinion as 'attorney's fees,' the term used in 15 U.S.C. § 1117(b), rather than the less commonly used 'attorney fees,' the term used in 15 U.S.C. § 1117(a), or the likely more accurate 'attorneys' fees' . . .

For the reasons set forth below, the Court GRANTS Plaintiff's motion for entry of default judgment.  The Court further GRANTS Plaintiff's request for a permanent injunction as set forth below and for an order requiring Defendants to deliver for destruction any infringing advertisements.  The Court awards Plaintiff $9,676.00 in attorney's fees and $1,738.00 in costs.

## I.    Background

The following summary is drawn from Plaintiff's Amended Complaint ("AC"), [Dkt. No. 4], motion for default judgment, [Dkt. No. 11], and exhibits and declarations attached thereto.

Plaintiff Sub-Zero, Inc. is a Wisconsin corporation that manufactures and distributes kitchen appliances, including Sub-Zero refrigerators, freezers, and wine storage units.  (AC ¶ 4).  Sub-Zero has developed an international reputation for high quality kitchen products.  (*Id.*).  Sub-Zero maintains a network of authorized repair service providers who are authorized to use Sub-Zero's trademarks.  (*Id.*).

Sub-Zero has two registered trademarks: (1) the "Sub-Zero" word mark, (AC ¶ 7, Ex. A); and (2) the Sub-Zero logo, (AC ¶ 8; Ex. B).  Both trademarks have been registered in connection with the installation, repair, and maintenance of kitchen repairs.  (*Id.*).  Sub-Zero has marketed its products under the "Sub-Zero" word mark since at least 1945 and has used its logo in marketing since at least 1964.  (AC ¶ 7, 8).

Defendant Sub-Zero NY Refrigeration & Appliances Services, Inc. is a New York corporation that purports to be in the business of repairing Sub-Zero products.  (AC ¶ 5).  Defendant Nikki Grochowski is the owner of Sub-Zero Refrigeration Service.  (AC ¶ 6).  Sub-Zero Refrigeration Service does business under the names "Sub-Zero Refrigeration" and "Sub-Zero Refrigeration Service."  (AC ¶ 11).  Sub-Zero Refrigeration Service is not an authorized Sub-Zero

---

."); *N.A.A.C.P. v. Town of E. Haven*, 259 F.3d 113, 114 n.1 (2d Cir. 2001) ("Although the fees sought in this case are for multiple attorneys, we refer to them in the singular possessive, 'attorney's fees,' because that is the term used by [the statute in that case] in providing for such awards.").

repair service provider and is not endorsed or sponsored by, or affiliated, connected or associated with, Sub-Zero.  (AC ¶¶ 5, 10).

Sub-Zero Refrigeration Service, at the direction and control of Grochowski, conducts its business in a manner that is purposely designed to confuse consumers into believing that Sub-Zero Refrigeration Service is endorsed or sponsored by, or affiliated, connected or associated with, Sub-Zero.  (AC ¶ 10).

Sub-Zero Refrigeration Service and Growchowski have mislead consumers regarding Sub-Zero Refrigeration Service's qualifications for repairing Sub-Zero products, and have defrauded customers by improperly performing repairs, performing unnecessary repairs, and overcharging for repairs.  (AC ¶ 16).

Sub-Zero Refrigeration Service operated a website at www.subzerorefrigerationservice.com, which stated, "[a]ll our service men are factory trained master Sub-Zero technicians."[2]  (AC ¶ 12). On their invoices, Sub-Zero Refrigeration Service and Grochowski describe themselves as "specialists" in Sub-Zero repairs.  (AC ¶ 15; Ex. D).  However, none of Sub-Zero Refrigeration Service's employees have received any training from Sub-Zero.  (AC ¶ 12).

Sub-Zero Refrigeration's website, invoices, advertisements, and promotional materials display the "Sub-Zero" word mark and logo without permission from Sub-Zero.  (AC ¶¶ 12–14, Ex. C & D).  Sub-Zero's website also displays a Sub-Zero refrigerator without authorization from Sub-Zero.  (AC ¶ 12).

Sub-Zero filed the present action after being contacted by a customer of Sub-Zero Refrigeration Service who claimed that Sub-Zero Refrigeration Service defrauded her by charging her $9,500.00 for repairs that her Sub-Zero product did not need and that were not properly performed.  (AC ¶ 15).  The website www.yellowbot.com, contains three complaints against Sub-

---

[2] As of the date of this opinion, the website appears to be no longer available.

Zero Refrigeration Service.  (Simmons Decl. ¶ 6 [Dkt. No. 12]).  Two of the complaints describe Sub-Zero Refrigeration Service as a "scam" and the third claims that the company "sabotaged" the customer's Sub-Zero product.  (Simmons Decl. Ex. B).

Sub-Zero commenced this action on April 17, 2013.  [Dkt. No. 1].  Sub-Zero served an Amended Complaint on Sub-Zero Refrigeration Service via the New York Secretary of State on June 17, 2013, [Dkt. No. 6], and on Grochowski at her home on June 15, 3013, [Dkt. No. 7].

On or about July 15, 2013, counsel for Grochowski contacted counsel for Sub-Zero to discuss dismissing Grochowski from this action.  (Simmons Decl. ¶ 7).  Counsel for Grochowski asserted that Grochowski did not control Sub-Zero Refrigeration Service.  (*Id.*).  Sub-Zero's counsel forwarded Grochowski's counsel a copy of a report that listed Grochowski as the company's contact person, and requested that Grochowski inform Sub-Zero who she contended actually controlled the company and its website.  (*Id.*; Ex. C).  Grochowski's counsel did not respond to Sub-Zero's request and has not contacted Sub-Zero's counsel since.  (Simmons Decl. ¶ 7).

Neither Defendant has filed an answer or otherwise appeared in this action.  The Clerk of the Court entered a default against both Defendants on July 18, 2013.  [Dkt. No. 8].

## II.    Discussion

"[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "However, a district court need not concur that the alleged facts in the complaint constitute a valid cause of action and must evaluate whether the allegations in the complaint are sufficient to establish liability."  *Rolex Watch U.S.A., Inc. v. Rolex Deli Corp.*, 11 Civ. 9321, 2012 WL 5177517, at *1 (S.D.N.Y. Oct. 18, 2012) (Jones, J.).  "Accordingly, the Court must determine whether the well pleaded allegations in the Complaint, admitted by Defendants on this motion, are sufficient to

4

establish liability for the claimed causes of action." *Id.* Plaintiff here asserts claims for trademark infringement and false advertising in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125, as well as common law trademark infringement and unfair competition under New York law.

    A. *Liability*

        1. <u>Lanham Act Claims</u>

            i. **Trademark Infringement**

"To succeed in establishing liability for infringement under the Lanham Act, a plaintiff must prove: (1) that it owns a valid, protectible trademark; (2) that the defendant used the trademark in commerce and without consent; and (3) that there was a likelihood of consumer confusion." *C=Holdings B.V. v. Asiarim Corp.*, 12 Civ. 928, 2013 WL 6987165, at *8 (S.D.N.Y. Dec. 16, 2013) (Sullivan, J.). Sub-Zero has proven all prongs of this test and has therefore established liability for trademark infringement under the Lanham Act.

           (1) *Valid, Protectable Trademark*

Sub-Zero has two valid, protectable trademarks. Sub-Zero has secured trademark registration for its "Sub-Zero" word mark in connection with the installation, repair, and maintenance of kitchen appliances. (AC ¶ 7). The registration for the "Sub-Zero" word mark is U.S. Reg. No. 3507324. (*Id.*; Ex. A). Sub-Zero has also secured trademark registration for its logo in connection with the installation, repair, and maintenance of kitchen appliances. (AC ¶ 8). The registration for Sub-Zero's logo is U.S. Reg. No. 1625853. (*Id.*; Ex B).

           (2) *Defendants' Use In Commerce Without Consent*

Sub-Zero's allegations have sufficiently established that Defendants used Sub-Zero's trademarks in commerce without Sub-Zero's consent. Sub-Zero alleges that Defendants use the trademarked "Sub-Zero" word mark in their business names—" Sub-Zero NY Refrigeration &

Appliances Services, Inc.," "Sub-Zero Refrigeration" and "Sub-Zero Refrigeration Service"—without permission.  (AC ¶ 11).  Sub-Zero also alleges that Defendants' invoices, website, www.subzerorefrigerationservice.com, advertisements, and other promotional material display the trademarked "Sub-Zero" word mark and logo without authorization from Sub-Zero.  (AC ¶¶ 12–14; Ex. C & D).

(3) *Likelihood of Consumer Confusion*

In determining the likelihood of consumer confusion, district courts examine the eight factors in *Polaroid Corp. v. Polarad Elecs. Corp*., 287 F.2d 492 (2d Cir. 1961), which are: "(1) the strength of the senior mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will 'bridge the gap'; (5) actual confusion; (6) the defendant's good faith (or bad faith) in adopting its own mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers."  *Savin Corp. v. Savin Grp*., 391 F.3d 439, 456 (2d Cir. 2004).

The Court does not have information regarding the strength of the Sub-Zero mark or the sophistication of buyers; however, all other *Polaroid* factors weigh in favor of Sub-Zero.  The marks used by Defendants are Sub-Zero's exact word mark and logo.  Sub-Zero and Defendant compete in the same market because Sub-Zero maintains an authorized network of repair service providers and Defendants purport to be specialists in repairing Sub-Zero products.  "Because the parties in this case are already competitively proximate, there is no gap to bridge and so this factor is irrelevant."  *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 531 (S.D.N.Y. 2011) (Sweet, J.), *aff'd*, 511 F. App'x 81 (2d Cir. 2013).  That Sub-Zero has been notified by one of Defendants' customers about Defendants' fraudulent practices suggests that actual confusion is occurring.  Moreover, Defendants' use of Sub-Zero's exact word mark and logo

indicates bad faith.  *Id.* at 536 ("Bad faith can be found where prior knowledge of the senior user's mark or trade dress is accompanied by similarities so strong that it seems plain that deliberate copying has occurred.").  Last, the evidence reveals that while Sub-Zero has developed a reputation for high-quality products, (AC ¶ 4), Defendants' services are of poor quality, (AC ¶ 15); (Simmons Decl. ¶ 6 & Ex. B), putting Sub-Zero's reputation at risk.  *See The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 965 (2d Cir. 1996) (the quality of defendant's product "factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality" (internal quotation marks omitted)).

The Court therefore finds that the use of the "Sub-Zero" word mark in Defendants' business names and the use of the "Sub-Zero" word mark and logo on Defendants' website, invoices, advertisements, and other promotional material are likely to cause confusion as to Defendants' affiliation with Sub-Zero.  *See, e.g., New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 341 (S.D.N.Y. 2010) (McMahon, J.) ("[T]he absence of certain factors (alone or in combination) . . . does not automatically mean there is no likelihood of confusion.").

### ii.   **False Advertising**

"Two different theories of recovery are available to a plaintiff who brings a false advertising action under . . . the Lanham Act.  First, the plaintiff can demonstrate that the challenged advertisement is literally false, *i.e.*, false on its face. . . .  Alternatively, a plaintiff can show that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007).

Sub-Zero's allegations have sufficiently established a false advertising claim under the first theory of recovery.  Sub-Zero's Complaint alleges that the statement on Defendants' website that, "[a]ll of our service men are factory trained master Sub-Zero technicians," is "literally false

because, to Sub-Zero's knowledge, none of Sub-Zero Refrigeration Service's employees have
received any training from Sub-Zero and there is no such thing as a 'master Sub-Zero technician.'"
(AC ¶ 12).

### iii.   **Individual Liability of Grochowski**

"Employees who direct, control, ratify, participate in, or are the moving force behind a
Lanham Act violation can be held personally liable for those violations." *Merck Eprova AG v.
Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 426 (S.D.N.Y. 2013) (Sullivan, J.).  Sub-Zero has
sufficiently alleged that Grochowski was a "moving force" behind Sub-Zero Refrigeration Service's
Lanham Act violations described above.  Sub-Zero's Complaint alleges that Sub-Zero Refrigeration
Service, at the direction and control of Grochowski, conducts its business in a manner that is
purposely designed to confuse consumers into believing that Sub-Zero Refrigeration Service is
endorsed or sponsored by, or affiliated, connected or associated with, Sub-Zero.  (AC ¶ 10).  The
Complaint goes on to allege specific acts committed by Sub-Zero Refrigeration Service that
constitute trademark infringement (e.g., the use of Sub-Zero's trademarked word mark and logo on
Defendants' website without permission), and that constitute false advertising (e.g., the literally
false statement described above on Defendants' website).  Although Grochowski's attorney claimed
in correspondence with Plaintiff, that Grochowski does not control Sub-Zero Refrigeration Service,
Grochowski has not appeared to make that assertion on the record in this case.  "[A] party's default
is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound*, 973
F.2d at 158.

### 2. Common Law Claims

### i.   **Trademark Infringement**

"In New York, common law trademark infringement . . . claims largely mirror the Lanham Act claims.  Like a Lanham Act claim, a trademark infringement claim under New York common law requires a showing of consumer confusion."  *C=Holdings B.V.*, 2013 WL 6987165, at *12 (internal citations and quotation marks omitted).  Because Sub-Zero's allegations have sufficiently established a trademark infringement claim under the Lanham Act, the allegations have also established a common law trademark infringement claim under New York law.  *See, e.g.*, *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 300–01 (S.D.N.Y. 2002) (Cote, J.) (finding that because plaintiff had established a Lanham Act trademark infringement claim, plaintiff had also established a common law claim for trademark infringement under New York law).

ii.    **Unfair Competition**

"A party asserting a claim for unfair competition predicated upon trademark infringement . . . must show that the defendant's use of the trademark is likely to cause confusion or mistake about the source of the allegedly infringing product."  *Beverage Mktg. USA, Inc. v. S. Beach Beverage Co., Inc.*, 799 N.Y.S. 2d 242, 244 (App. Div. 2005).  "Central to this notion is some element of bad faith."  *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008) (McMahon, J.) (quotation marks omitted).  As set forth above, Sub-Zero's allegations have sufficiently established likelihood of consumer confusion and Defendants' bad faith.  Sub-Zero has therefore also established a claim for unfair competition under New York law.  *See, e.g., GTFM, Inc.*, 215 F. Supp. 2d at 300–01 (finding that because plaintiff had established a Lanham Act trademark infringement claim and because defendant acted in bad faith, plaintiff had also established a common law claim for unfair competition under New York law).

B.  *Relief*

Sub-Zero seeks (1) a permanent injunction pursuant to 15 U.S.C. § 1116; (2) an order requiring Defendants to deliver for destruction any infringing advertisements pursuant to 15 U.S.C. § 1118; and (3) attorney's fees and costs pursuant to 15 U.S.C. § 1117.

1. Permanent Injunction

The Lanham Act grants district courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116. The district court may grant a permanent injunction "where the plaintiff has shown a likelihood of success on the merits," *PRL USA Holdings, Inc.*, 800 F. Supp. 2d at 539, and the plaintiff has shown "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction," *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Sub-Zero has established each of these elements and therefore a permanent injunction in its favor, as set forth below, is warranted.

(1) *Likelihood of Success on the Merits*

Sub-Zero has established success on the merits because Defendants' default constitutes an admission of liability. *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008) (Sullivan, J.).

(2) *Irreparable Injury*

"[I]n a trademark case, irreparable injury is established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Tyrrell-Miller*, 678 F. Supp. 2d at 120

(quotation marks omitted).  As described above, Sub-Zero has sufficiently alleged facts showing a likelihood of consumer confusion and therefore has also established irreparable injury.

(3) *Inadequate Legal Remedies*

Legal remedies are inadequate to protect Sub-Zero (1) "[b]ecause the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable," *PRL USA Holdings, Inc.*, 800 F. Supp. 2d at 541; and (2) the Court "may infer from a defendant's default that it is willing to, or may continue its infringement," *Pearson Educ., Inc. v. Vergara*, 09 Civ. 6832, 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010) (Fox, Mag., J.).

(4) *Balance of Hardships*

Sub-Zero has marketed its products under the "Sub-Zero" word mark and logo since 1945 and 1965, respectively.  (AC ¶¶ 7, 8).  In 2007, Sub-Zero filed for and later obtained trademark registration of both its word mark and logo.  (AC Ex. A & B).  Sub-Zero has developed an international reputation for high quality kitchen appliances and has been notified by at least one consumer of Defendants' fraudulent practices.  (AC ¶¶ 4, 15).  The likelihood of consumer confusion and potential loss of goodwill and reputation threaten to cause Sub-Zero great harm.  In contrast, by defaulting in this case, Defendants have failed to allege any hardship. Accordingly, the Court finds that the balance of hardships weigh in favor of issuing Sub-Zero an injunction.

(5) *Public Interest*

"The consuming public has a protectable interest in being free from confusion, deception and mistake."  *PRL USA Holdings, Inc.*, 800 F. Supp. 2d at 541.  As described above, Sub-Zero has sufficiently alleged facts showing a likelihood of consumer confusion and therefore this factor also weighs in favor of Sub-Zero.

Because each element weighs in favor of Plaintiff, a permanent injunction is GRANTED, as specified in the Conclusion to this Opinion and Order.

### 2. Destruction of Infringing Advertisements

Pursuant to 15 U.S.C. § 1118, Sub-Zero seeks an order requiring Defendants "to deliver up for destruction any and all advertisements (and the like) in their possession . . . that use the term 'Sub-Zero' in connection with the sale or provision of services in a manner that confuses the public about Sub-Zero's authorization to Defendants for use of its marks."  (Proposed Order For Entry of Default Judgment ¶ C [Dkt. No. 10-3]).  In light of Defendants' failure to appear in this action, the Court finds that relief under 15 U.S.C. § 1118 is appropriate in this case.  *See, e.g., U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc.*, 12 Civ. 8753, 2013 WL 5363777, at *6 (S.D.N.Y. Sept. 26, 2013) (Gorenstein, Mag., J.) ("Although courts have discretion to deny a request for a destruction order when a permanent injunction against further infringement may otherwise provide an adequate remedy, there is no reason to believe that a permanent injunction in this case would render a destruction order unnecessary in light of Pizza Buffet's complete failure to participate in this litigation." (internal citations omitted)), *report and recommendation adopted*, 12 Civ. 8753, 2013 WL 5664058 (S.D.N.Y. Oct. 17, 2013) (Koeltl, J.).  Accordingly, Defendants are ordered to deliver to Plaintiff for destruction all advertisements that use Sub-Zero's word-mark or logo.

### 3. Attorney's Fees and Costs

Sub-Zero also seeks $9,676.00 in attorney's fees and $1,738.00 in costs incurred in bringing this action.  (Pl.'s Mem. in Supp., 6–7).  Under the Lanham Act, the Court may award reasonable attorney's fees in "exceptional cases."  15 U.S.C. § 1117.  "'Willful infringement' is an 'exceptional circumstance' warranting the award of attorney's fees."  *Malletier v. Artex Creative Int'l Corp.*, 687

12

F. Supp. 2d 347, 359 (S.D.N.Y. 2010) (Batts, J.) (citing *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)).  Because Defendants here have defaulted they are deemed to be willful infringers and an award of attorney's fees is therefore appropriate.  *See, e.g., Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (Marrero, J.) ("By virtue of the default, the Lubans' infringement is deemed willful . . .").

i.  **Attorney's Fees**

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 493 F.3d 110 (2d Cir. 2007), the Second Circuit "'abandon[ed]' the 'lodestar' approach to awarding attorney's fees, and adopted instead a 'presumptively reasonable fee' calculation." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009) (quoting *Arbor Hill*, 493 F.3d at 117–18).[3]  Under the presumptively reasonable fee calculation, the court first "sets a reasonable hourly rate, bearing in mind all the case-specific variables [highlighted in *Arbor Hill*]."  *Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d 507, 510 (S.D.N.Y. 2010) (Chin, J.).  "[T]he court then uses that reasonable hourly rate to calculate the 'presumptively reasonable fee' by multiplying the rate by the number of hours reasonably expended."  *Id.* at 510–11.

(1) *Reasonable Hourly Rate*

The reasonable hourly rate is the rate "a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184.  "This rate should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  *Artex Creative Int'l Corp.*, 687 F. Supp. 2d at 359 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  "[T]he court should not only consider the rates approved in other cases in

---

[3] "Although the Supreme Court has since expressed its preference for the lodestar method in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010), most district courts in this Circuit continue to apply *Arbor Hill's* 'presumptively reasonable fee' calculation in setting the reasonable fee amount."  *Spencer v. City of New York*, 06 Civ. 2852, 2013 WL 6008240, at *2 & *2 n.1 (S.D.N.Y. Nov. 13, 2013) (Wood, J.) (collecting cases).

the District, but should also consider any evidence offered by the parties.  The Court is also free to rely on its own familiarity with prevailing rates in the District."  *Id.* (internal citation omitted).  It is the fee movant's burden to establish the prevailing market rate.  *Blum*, 465 U.S. at 895 n.11.

In determining what a reasonable, paying client would be willing to pay, the Second Circuit instructed district courts to consider the twelve factors listed by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th. Cir. 1974).[4]  *Arbor Hill*, 522 F.3d at 186 n.3. The Second Circuit further directed district courts to consider:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id*. at 184.

Sub-Zero seeks attorney's fees for services provided by Foley & Lardner LLP.  The legal services were performed by Jeffrey Simmons, Andrew Baum, and Jared Brenner.

### i.      Mr. Simmons

---

[4] The twelve *Johnson* factors are:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3.

Mr. Simmons is a partner in the Trademark, Copyright, and Advertising Practice Group and the Intellectual Property Litigation Practice Group of Foley & Lardner's Madison, Wisconsin office.  (Simmons Decl. ¶ 2).  He has been practicing law since 1998 and has "litigated numerous trademark infringement cases during [his] career."  (*Id.*).  Foley & Lardner billed Sub-Zero $485 an hour for Mr. Simmons' services.  (Pl.'s Mem. in Supp., 6); (Simmons Decl., Ex. A).  The Court finds that $485 an hour is a reasonable hourly rate for an attorney with Mr. Simmons' expertise and experience, and is in line with the prevailing market rate in this district.  *See, e.g.*, *Ritchie v. Gano*, 756 F. Supp. 2d 581, 583–84 (S.D.N.Y. 2010) (Marrero, J.) (finding rates of $475 to $525 an hour for two partners reasonable); *Artex Creative Int'l Corp.*, 687 F. Supp. 2d at 360–61 (finding hourly rate of between $475 and $540 for senior partner was reasonable and collecting cases awarding rates ranging from $320 to $560 an hour); *GAKM Res. LLC v. Jaylyn Sales Inc.*, 08 Civ. 6030, Report and Recommendation of Magistrate Judge, at 18–19 (S.D.N.Y. May 21, 2009) [Dkt. No. 44] (approving rates of $650 an hour, $600 an hour, and $525 an hour and collecting cases awarding rates ranging from $600 an hour to $650 an hour), *report and recommendation adopted by*, *GAKM Res. LLC v. Jaylyn Sales Inc.*, 08 Civ. 6030, 2009 WL 2150891 (S.D.N.Y. July 20, 2009) (Lynch, J.).

ii.   <u>Mr. Baum</u>

Mr. Baum is a senior partner in the Trademark, Copyright, and Advertising Practice Group and the Intellectual Property Litigation Practice Group of Foley & Lardner's New York City office.  (Simmons Decl. ¶ 3).  Mr. Baum has been practicing law since 1976 and "has represented clients in numerous trademark infringement actions during his career."  (*Id.*).  Foley & Lardner billed Sub-Zero $785 an hour for Mr. Baum's services.  (Pl.'s Mem. in Supp., 6); (Simmons Decl., Ex. A).

Although higher than any hourly rate previously awarded in this district for a trademark case, the Court finds that $785 is an appropriate hourly rate for an attorney with Mr. Baum's expertise and experience.[5]  The Court notes that $785 an hour is the rate Sub-Zero, a sophisticated client, paid for Mr. Baum's services. *See, e.g., Diplomatic Man, Inc. v. Nike, Inc.*, 08 Civ. 139, 2009 WL 935674, at *6 (S.D.N.Y. Apr. 7, 2009) (Lynch, J.) ("[T]he reasonableness of an hourly fee may be determined exclusively by 'the rate a paying client would be willing to pay,' and here Nike has in fact has paid these rates.  What's more, the fact that Nike, a highly sophisticated business client, has paid these bills . . . is prima facie evidence of the reasonableness of the amount as a whole . . .  since Nike could not have assumed that it would be reimbursed in full, or even in part." (internal citations omitted)).

iii.    <u>Mr. Brenner</u>

Jared Brenner is a paralegal in Foley and Lardner's New York City office.  (Simmons Decl. ¶ 4).  Foley & Lardner billed Sub-Zero $200 an hour for Mr. Brenner's services.  (Pl.'s Mem. in Supp., 7); (Simmons Decl., Ex. A).  The Court finds that $200 an hour is reasonable and in line with the prevailing market rate for paralegals in this district.  *See, e.g., Merck Eprova AG v. Gnosis S.P.A.*, 07 Civ. 5898, 2011 WL 1142929, at *10 (S.D.N.Y. Mar. 17, 2011) (Sullivan, J.) (finding hourly rate of $205 an hour and $170 an hour reasonable); *Therapy Products, Inc. v. Bissoon*, 07 Civ. 8696, 2010 WL 2404317, at *5 (S.D.N.Y. Mar. 31, 2010) (Katz, Mag., J.) (approving hourly rate of $170 an hour and $200 an hour), *report and recommendation adopted sub nom.*, *Erchonia Corp. v. Bissoon*, 07 Civ. 8696, 2010 WL 2541235 (S.D.N.Y. June 15, 2010) (Cote, J.); *Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, 05 Civ. 6757, 2009 WL 466136, at *6 (S.D.N.Y.

---

[5] The highest hourly rate this Court was able to find in a trademark case in this district was $735 an hour for a partner in *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distributors Ltd. Liab. Co.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (Marrero, J.).  The Court did not provide any information as to the partner's experience or background. *Id.*

16

Feb. 25, 2009) (Dolinger, Mag., J.) (awarding hourly rate of $205 an hour, $220 an hour, and $235 an hour).

(2) <i>Hours Reasonably Expended on Case</i>

The fee applicant bears the burden of establishing the hours reasonably expended on the case and must submit adequate documentation of those hours. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In the Second Circuit, the fee applicant must normally submit contemporaneously prepared time records. *See, e.g.*, *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees, whether submitted by profit-making or non-profit lawyers, for any work done after the date of this opinion should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."). The fee applicant must exercise "billing judgment" and exclude any hours that were not reasonably expended on the case. *Hensley*, 461 U.S. at 434.

In accordance with *Carey*, Sub-Zero has provided contemporaneous time-records for Mr. Simmons, Mr. Baum, and Mr. Brenner. (Response to Order on Documentation of Attorney's Fees, Ex. A, Ex. B, & Ex. C [Dkt. No. 15]). Sub-Zero seeks compensation for 8.9 hours expended by Mr. Simmons, 4.2 hours expended by Mr. Baum, and 10.4 hours expended by Mr. Brenner. (Simmons Decl., Ex. A). The Court has reviewed each attorney and paralegal's time-records and finds that the hours expended on this case were reasonable. *See, e.g., Mamiya Am. Corp. v. HuaYi Bros.*, *Inc.*, 09 Civ. 5501, 2011 WL 1322383, at *12 (E.D.N.Y. Mar. 11, 2011) (finding 37.7 hours reasonable in default trademark infringement case), *report and recommendation adopted*, 09 Civ. 5501, 2011 WL 1253748 (E.D.N.Y. Mar. 31, 2011). Accordingly, Sub-Zero will be compensated for all requested hours.

ii.     **Costs**

Sub-Zero also seeks $1,738.00 in costs, consisting of $350.00 for filing fees and $1,388.00 for service of process.  These are routine costs that are typically awarded to the prevailing party. *See, e.g.*, *Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 506 (S.D.N.Y. 2009) (Keenan, J.) ("The costs that a party may recover include such items as filing fees, fees for service process, and witness fees.").  Accordingly, the Court awards Sub-Zero $1,738.00 in costs.

**III.    Conclusion**

For the reasons set forth above, the Court GRANTS Plaintiff's motion for entry of default judgment.  The Court further GRANTS Plaintiff's request for a permanent injunction as set forth below and Plaintiff's request for an order requiring Defendants to deliver for destruction any infringing advertisements.  The Court awards Plaintiff $9,676.00[6] in attorney's fees and $1,738.00 in costs.

Defendants Sub Zero NY Refrigeration & Appliances Services Inc. and Nikki Grochowski and their agents are permanently enjoined from:

(1) using the word "Sub-Zero" in the name of any business they own, operate, or are affiliated with;

(2) using Sub-Zero, Inc.'s logos or any words or images confusingly similar to Sub-Zero, Inc.'s logos;

(3) using the phrases "Sub-Zero Authorized Service," "Sub-Zero Experts," "Sub-Zero Repair Experts," "Sub-Zero Specialists," "factory trained Sub-Zero technicians," or any similar phrase in any advertising, marketing, promotional, or informational materials, including any Internet website owned or controlled by Defendants;

---

[6] The Court notes that this figure is slightly less than the figure that one would obtain by simply multiplying the hourly rates by the hours worked.  Plaintiff provides no explanation for the discrepancy.  However, because Plaintiff requests less than what it is owed, the Court awards Plaintiff the full amount it requests.

(4) engaging in acts that constitute trademark infringement, unfair competition, and false advertisement under the laws of the United States and that would damage or injure Sub-Zero, Inc.; and

(5) inducing, encouraging, instigating, aiding, abetting or contributing to any of the aforesaid acts.

Defendants Sub Zero NY Refrigeration & Appliances Services Inc. and Nikki Grochowski are ordered to take all actions necessary to transfer ownership of the domain name www.subzerorefrigerationservice.com to Sub-Zero, Inc., and all internet service providers for Defendants shall take any actions necessary to effectuate that transfer.

Defendants are further ordered to deliver to Plaintiff for destruction any and all advertisements (and the like) in their possession, or under their custody or control, that use the word mark "Sub-Zero" or the Sub-Zero logo in connection with the sale or provision of their services.

The Clerk of the Court is directed to close this case.  Any pending motions are moot.


   SO ORDERED.


Dated: New York, New York
       April 1, 2014
                              _____/s/_____
                              Kimba M. Wood
                              United States District Judge